UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Amelia Arcamone-Makinano and Craig C. Downer,<br><br>　　　　Plaintiffs<br>v.<br><br>Deborah Haaland and Tracy Stone-Manning,<br><br>　　　　Defendants | Case No.: 2:22-cv-00621-JAD-NJK<br><br>**Order Granting Defendants' Motion to Dismiss and Closing Case**<br><br>[ECF No. 13, 23] |

　　　Pro se plaintiffs Amelia Arcamone-Makinano and Craig C. Downer sue the Secretary of the United States Department of the Interior and the Director of the United States Bureau of Land Management (BLM)[1] for its management of wild horses in the Jackson Mountains Herd Management Area in northern Nevada. Defendants move to dismiss this suit for lack of subject-matter jurisdiction, arguing that the plaintiffs failed to challenge a final agency action and that they lack standing to sue. Because plaintiffs have not established that this court has subject-matter jurisdiction over this action, I grant the BLM's motion and close this case.

## Background

　　　The Wild Free-Roaming Horses and Burros Act tasks the Secretary of the Interior with protecting and managing the wild horses and burros that wander the American West "in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands."[2] If "overpopulation exists on a given area of the public lands," the BLM must "immediately remove excess animals from the range so as to achieve appropriate management

---

[1] I refer to both defendants collectively as "the BLM" throughout this order.
[2] 16 U.S.C. § 1333(a).

levels."[3]  To carry out the Act's directives, the BLM has established procedures to remove excess animals when they exceed the appropriate-management threshold for—or stray outside of—the BLM's established "herd[-]management areas" (HMAs).[4]

From September 15, 2021, to October 1, 2021, the BLM conducted an emergency wild-horse gather at the Jackson Mountains HMA because the wild-horse population was 470% over the established appropriate-management level, resulting in a shortage of "forage and water" for the animals.[5]  The BLM removed 527 horses during the gather, which was carried out under the previous 10-year environmental-assessment decision for the Jackson Mountains HMA issued in 2012.[6]  And In August 2021, the month before the gather, the BLM released a preliminary environmental assessment "analyzing its proposal to gather and remove excess wild horses" for the next ten years.[7]  The preliminary assessment was subject to a public notice-and-comment

---

[3] *Id.* at § 1333(b)(2).

[4] *See* U.S. Dep't of the Interior, Bureau of Land Mgmt., *Wild Horses and Burros Management Handbook* (June 2010), https://www.blm.gov/sites/blm.gov/files/uploads/Media_Library_BLM_Policy_H-4700-1.pdf.  The BLM asks that I take judicial notice of the handbook and other documents on the BLM website.  ECF No. 13 at 4 n. 1.  I grant that request because the documents were "made publicly available by [a] government [entity] and neither party disputes the authenticity of the websites or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citing Fed. R. Evid. 201).

[5] U.S. Dep't of the Interior, Bureau of Land Mgmt., *Black Rock Field Office to conduct an emergency wild[-]horse gather in Jackson Mountains Herd Management Area* (Sept. 9, 2021), https://www.blm.gov/programs/wild-horse-and-burro/herd-management/gathers-and-removals/nevada/2021-Jackson-Mountain-HMA-Emergency-Wild-Horse-Gather.

[6] U.S. Dep't of the Interior, Bureau of Land Mgmt., *The Black Rock Field Office has concluded the Jackson Mountain Herd Management Area emergency wild[-]horse gather* (Oct. 1, 2021), https://www.blm.gov/press-release/black-rock-field-office-has-concluded-jackson-mountain-herd-management-area-emergency; U.S. Dep't of the Interior, Bureau of Land Mgmt., *Jackson Mountains Wild Horse Gather*, NEPA No. DOI-BLM-NV-W030-2012-0005-EA, https://eplanning.blm.gov/eplanning-ui/project/30004/510.

[7] U.S. Dep't of the Interior, Bureau of Land Mgmt, *The Black Rock Field Office seeks public comment on the Jackson Mountains Herd Management Area wild[-]horse gather plan preliminary environmental assessment* (August 27, 2021), https://www.blm.gov/press-

period for 30 days.[8]  On May 31, 2022, the BLM issued a final environmental assessment, decision record, and "finding of no significant impact" to finalize its proposal.[9]

In April 2022, plaintiffs filed this suit.[10]  Their amended complaint, filed on May 3, 2022, challenges the preliminary environmental assessment published in August 2021.[11] They claim that the assessment is arbitrary and capricious because the BLM ignored scientific advice to improve its gather methods and didn't comply with its own handbook's directives concerning the creation of a "Herd Management Area Plan."[12]

## Discussion

Federal Rule of Civil Procedure (FRCP) 12(b)(1) authorizes federal courts to dismiss a complaint for want of subject-matter jurisdiction.[13]  An FRCP 12(b)(1) challenge may be either factual (contesting the truth of the complaint's allegations) or facial (contesting the sufficiency of the complaint's allegations to invoke federal jurisdiction).[14]  In resolving a facial attack, the court takes all well-pled facts in the complaint as true[15] because "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

---

release/black-rock-field-office-seeks-public-comment-jackson-mountains-herd-management-area.

[8] *Id.*

[9] U.S. Dep't of the Interior, Bureau of Land Mgmt., *Documents*, NEPA No. DOI-BLM-NV-W030-20121-0005-EA, https://eplanning.blm.gov/eplanning-ui/project/2013460/570.

[10] ECF No. 1.

[11] ECF No. 5.

[12] *Id.* at 34–38.

[13] Fed. R. Civ. P. 12(b)(1).

[14] *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[15] *Safe Air*, 373 F.3d at 1039.

jurisdiction."[16]  But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[17]  Plaintiffs bear the burden of proving that subject-matter jurisdiction exists[18] "as of the time the action is commenced."[19]  If a court lacks subject-matter jurisdiction, it must "dismiss the case, regardless of how long the litigation has been ongoing."[20]

**A.     This court lacks subject-matter jurisdiction over plaintiffs' claims.**

   *1.     The BLM's preliminary environmental assessment is not a final agency action.*

Challenges to agency actions made under the Wild Horse Act must be brought under the Administrative Procedure Act (APA).[21]  Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[22]  But the APA only permits challenges to agency actions that are considered "final."[23]  The United States Supreme Court has established a two-part test to determine whether an agency action is final: it must (1) "mark the consummation of the agency's decision process—it must not be of a merely tentative or interlocutory nature"— and (2) "be [an action] by which rights or obligations have been determined, or from which legal

---

[16] *Id.*

[17] *Id.*

[18] *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

[19] *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).

[20] *Rainero v. Archon Corp.*, 844 F.3d 832, 841 (9th Cir. 2016).

[21] *See In Defense of Animals, Dreamcatcher Wild Horse and Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014).

[22] 5 U.S.C. § 706(2)(A).

[23] 5 U.S.C. § 704.

4

consequences will flow."[24]  "Finality is a jurisdictional requirement to obtaining judicial review under the APA."[25]

The August 2021 preliminary environmental assessment was not a final agency action. That assessment was subject to a 30-day notice-and-comment period, demonstrating that it was a "tentative or interlocutory" document—not a final one.  No legal consequences flowed from the preliminary assessment: it merely explains the options that the BLM was considering to reduce the population of wild horses in the Jackson Mountains area.  And the BLM issued a final environmental assessment on May 31, 2022—approximately a month-and-a-half after plaintiffs filed their complaint.[26]  So, because plaintiffs challenge the non-final preliminary assessment, this court lacks subject-matter jurisdiction over this APA action.  The fact that the BLM has since issued a final assessment does not alter this result: subject-matter jurisdiction must exist when a complaint is filed.[27]  Because it did not, this action must be dismissed.

### 2. *Plaintiffs lack standing to challenge the 2021 emergency gather.*

In plaintiffs' response to the BLM's motion, they contend that they are not challenging the preliminary environmental assessment, but rather the emergency gather that the BLM carried out in September and October of 2021.[28]  The BLM contends that the amended complaint does not separately challenge the 2021 gather and only references it in the context of their challenge to

---

[24] *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).

[25] *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

[26] *See* ECF No. 1; U.S. Dep't of the Interior, Bureau of Land Mgmt., *Documents*, NEPA No. DOI-BLM-NV-W030-20121-0005-EA, https://eplanning.blm.gov/eplanning-ui/project/2013460/570.

[27] *Morongo Band of Mission Indians*, 858 F.2d at 1380.

[28] *See* ECF No. 14 at 2–3.

5

the preliminary environmental assessment.[29]  But even if the plaintiffs' claim can be construed as a challenge to the gather, the BLM contends that plaintiffs lack standing to bring that challenge because they are unable to show injury in fact or the availability of redress.[30]

      The party asserting federal jurisdiction has the burden of establishing all of its requirements, including Article III standing.[31]  The "irreducible constitutional minimum" of Article III standing requires that the plaintiff show (i) "an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[32]  Plaintiffs have failed to show that they have suffered a concrete injury from the gather.  They allege that they both have legally cognizable interests in "viewing, photographing, [and] studying" the Jackson Mountains HMA.[33]  Downer claims that his family "lived in the western part of the Great Basin near the Pine Nut Mountains herds" and that he "photographed those horses with his father."[34]  He also alleges that he has "made field observations of the Jackson Mountains herd"; taken photos of them; and shared his observations with friends, family, and fellow ecologists.[35]  He alleges that "he [now] feels a loss to see the Jackson Mountains herd inhumanely gathered and removed."[36]  Makinano alleges that she is a resident of New York, has "written equestrian articles and has

---

[29] ECF No. 18 at 3.

[30] *Id.* at 4–7, 8.

[31] *Id.*; *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

[32] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

[33] ECF No. 5 at ¶ 8.

[34] *Id.* at ¶ 9.

[35] *Id.* at ¶ 10.

[36] *Id.* at ¶ 11.

observed" the Jackson Mountains herd, and has "planned to return to Jackson Mountains to write articles about the wild horses."[37]

Though emotionally compelling, these allegations show no legal injury in fact. Plaintiffs do not demonstrate that they have any concrete intentions to return to the Jackson Mountains area. As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" that standing requires.[38] Nor do they explain if or how the BLM's emergency gather has harmed their ability to visit the area and observe the remaining wild horses.

Neither can plaintiffs demonstrate that this court is able to provide redress for the 2021 gather. "The majority of cases to have considered challenges to individual horse gathers have determined that the cases were moot after the gathers were complete."[39] Plaintiffs have failed to demonstrate how their challenge to the 2021 gather can be rectified by this court.[40] That event is

---

[37] *Id.* at ¶ 12.

[38] *Lujan*, 504 U.S. at 564.

[39] *Tillett v. Bureau of Land Management*, 2013 WL 12109407, at *2 (D. Mont. Feb. 7, 2013) (collecting cases), *aff'd*, 586 F. App'x 394 (9th Cir. 2014) (finding that the district court "properly dismissed [plaintiff's] action . . . as moot because the BLM moved the horses during the pendency of this action, and, thus, the district court could no longer provide any meaningful relief"). *See also Arcamone-Makinano v. Haaland*, 2022 WL 1042573, at *3 (10th Cir. Apr. 7, 2022) (unpublished) (finding that plaintiff lacked standing to challenge a completed gather because that "specific gather has been completed and is not capable of repetition"); *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006) (finding that plaintiffs lacked standing to challenge completed gathers because "it is impossible for the court to grant any effectual relief").

[40] Many of the cases addressing completed gathers deal with mootness—not initial standing—because the challenged gathers in those cases were completed during the course of the lawsuit. *See Tillet*, 2013 WL 12109407, at *2; *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). The analysis of mootness and standing are

complete, and the 2012 decision record undergirding the gather is no longer operative. Plaintiffs seek the return of the horses that were removed but fail to explain how or provide any authority for the proposition that the court could grant that relief or that such relief is even possible given the time that has elapsed since the gather operations. And plaintiffs do not challenge the 2012 decision record that governed the prior gather. So I find that, because plaintiffs cannot establish injury in fact or redressability, this court lacks subject-matter jurisdiction over their claims.

Plaintiffs move to file a sur-reply, claiming that the BLM raised the issue of mootness for the first time in its reply.[41] But the BLM did not raise mootness. It argued that plaintiffs lack standing to challenge the 2021 gather and analogized to the many cases in which courts have found that challenges to uncompleted gathers became moot upon their completion to support their redressability argument. The BLM only raised this argument because plaintiffs, in response to the BLM's motion, contended that their complaint was really about the 2021 gather, not the preliminary environmental assessment. I have thoroughly reviewed plaintiffs' amended complaint and, even when I liberally construe their allegations—as I must for pro se litigants[42]—they only challenge the preliminary environmental assessment and not the 2021 gather. So the BLM's contentions in reply to plaintiffs' arguments were proper, and I deny plaintiffs' motion for leave to file a sur-reply.[43]

---

similar but differ in an important way: plaintiffs have the burden to prove standing, while defendants have the burden to show that a claim is moot. *Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC) Inc.*, 528 U.S. 167, 190 (2000). So I place the burden on plaintiffs to show that the court can grant relief on the completed gather but also look to mootness cases to guide my analysis.

[41] ECF No. 23.

[42] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[43] I find that giving plaintiffs leave to amend their complaint to challenge the 2021 gather would be futile because they lack standing to bring that challenge.

8

**Conclusion**

IT IS THEREFORE ORDERED that the defendant's motion to dismiss **[ECF No. 13] is GRANTED**. **This case is DISMISSED without prejudice for lack of subject-matter jurisdiction**.

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file a sur-reply **[ECF No. 23] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
September 29, 2022